IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DENISSE MONTALVO-VAZQUEZ
Plaintiff

vs

CAROLYN W. COLVIN, Acting Commissioner of Social Security
Defendant

CIVIL 15-1004CCC

**STATEMENT OF REASONS**
**(IN SUPPORT OF SEPTEMBER 30, 2016 JUDGMENT)**

This case is on appeal from an unfavorable disability determination on claimant Denisse Montalvo-Vazquez' application for a period of disability and benefits filed on November 9, 2011 which was issued by Administrative Law Judge (ALJ) Emily Ruth Statum on December 9, 2013.  Under the heading "Findings of Fact," the ALJ determined that "claimant has the following severe impairments: degenerative disc disease, asthma, severe airflow obstruction, and depression." TR., p. 16.  Claimant reported a date of onset beginning on July 20, 2010.  She met the insured status requirements through December 31, 2015.  As to both the physical and mental impairments, the determination was made that their severity did not meet or equal the criteria of the listings. Claimant received extensive treatment at the State Insurance Fund since October 21, 2009 until June 2011 for a condition diagnosed as cervical-dorsal-lumbar strain and bilateral arm and hand strain supported by radiological studies.  This treatment consisted of physical therapy and medication to treat what is acknowledged to have been a painful back condition.  The ALJ observed that " the evidence of record shows that the claimant developed pain in neck, shoulders, back, arms and hands and sought treatment through the State Insurance Fund." TR., p. 18.

CIVIL 15-1004CCC                            2

The record also reflects that she has been treated by a pneumologist since May 2003 for bronchial asthma with medications and inhalers. The treating pneumologist gave a prognosis of "guarded." (Exhibit 4F, pp. 2-3).

The ALJ commented at page 8 of her decision that "the claimant's physical conditions affected her mental health." She then compared the progress notes of claimant's treatments at the APS Clinics of P.R. in the town of Yauco where she was psychiatrically evaluated on September 22, 2011 and had follow-up visits in 2012 and 2013. Simultaneously, she was independently treated by Dr. Alberto Rodriguez-Robles from January 25, 2011[1] to September 3, 2013. This treatment consisted of psychotherapy and medications. It should be noted that the medications prescribed at APS Clinics, following a diagnosis of depressive disorder, were Thorazine, Wellbutrin, Klonopin and Risperdal. See TR., p. 20, paragraph 2 of ALJ Decision and Exhibit 12F at p. 14. By June 12, 2012, her diagnosis was changed at APS Clinics from one of depressive disorder to bipolar disorder and two medications, Lithium and Elavil, were then added to the other four. Claimant manifested, approximately by June 12, 2012, poor judgment, poor insight, anxiety and depression as evidenced in the progress notes of APS Clinics. Other progress notes from APS Clinics revealed she suffered from sleep pattern alteration (August 10, 2011); poor concentration (December 8, 2011); anxious mood, poor judgment, altered sleep pattern (February 7, 2012); anxious mood, altered sleep pattern, poor insight (June 5, 2012); depressed mood (September 10, 2012) and anxious mood (October 18, 2012).

---

[1]Incorrectly stated by the ALJ as January 19, 2012. See TR., p. 20.

CIVIL 15-1004CCC                    3

The APS Clinics' progress notes all had a same format that required the physicians to check each of the boxes listed in it regarding appearance, consciousness level, mood, affect, insight, judgment, delusion, sleep pattern, appetite, libido, hallucination and thought process.  These progress notes do not contain, except for a very few, any personal observations by the psychiatrists regarding the patient.  Most of the boxes listed, corresponding to months for the period from the initial evaluation in 2011 to the year 2013, were marked "adequate."  Throughout the entire treatment period at APS Clinics, claimant took six medications, four of which were prescribed continuously during the two-year period and two which were added upon the change of diagnosis to one of bipolar disorder.

The ALJ reached the following unwarranted conclusion: "no weight is given to the medical source statement of Dr. Alberto Rodriguez (Exhibit 3F), as the assessed limitations about claimant's Mental Residual Functional Capacity are not supported by APS Clinics' treatment notes (Exhibits 12F and 19F)."  No reason is advanced by the ALJ for discarding the Mental Residual Functional Capacity Assessment prepared by Dr. Alberto Rodriguez Robles (Exhibit 3F), other than the blanket statement that they are unsupported by APS Clinics' progress notes.  The following are relevant observations.  The progress notes, with the exception of one, prepared during the period of Montalvo-Vazquez' treatment at APS Clinics for depression and bipolar disorder, all reflect that pharmacotherapy was the only therapeutic technique employed.  Claimant remained on the same treatment plan at the APS Clinics consisting of the six medications, prescribed in the same dosage and frequency, except when a change or dosage increase was recorded due to "lack of response" (February 7, 2012 and October 18, 2012; see Exhibit 12F, TR. pp. 291

CIVIL 15-1004CCC                    4

and 309) and "crisis due to development of panic attacks with irritability" (June 5, 2012, incorrectly translated as May 6, 2012; see Exhibit 12F, TR. p. 301). The clinic's progress notes do not reflect any respite in the pharmacotherapy prescribed consisting of four to six different medications during the entire period.

The Administrative Decision makes the following reference to the symptoms presented and the treatment provided to claimant by psychiatrist Dr. Alberto Rodriguez-Robles during the period of thirty three (33) months which partially coincided with her visits to the APS Clinics:

> Throughout treatment, consisting of psychotherapy and medication such as Strattera, Wellbutrin, Zoloft and Klonopin, the claimant has presented signs and symptoms of depressed mood, lack of energy, nihilism, low self-esteem, guilt, insomnia, anxiety and somatizations. The claimant also alleged memory problems, isolation, panic attacks, being stressed due to familial problems ... and was diagnosed by Dr. Rodriguez with a severe major depressive disorder.

The record reflects that Dr. Rodriguez-Robles was claimant's treating psychiatrist from January 25, 2011 through September 3, 2013. See Exhibit 3F, initial psychiatric evaluation dated August 12, 2011, incorrectly translated as dated December 8, 2011, TR. pp. 274-284; Exhibit 13F, TR. p. 320 and Exhibit 23F, TR. pp. 415-426. Her treatment with Dr. Rodriguez-Robles lasted 33 months. The ALJ incorrectly calculated Dr. Rodriguez-Robles' treatment as lasting 17 months, that is, from January 19, 2012 to September 3, 2013 (TR., p. 20), when the correct starting date for that treatment was January 25, **2011**, a year before, as documented by the record.

The ALJ's Decision refers to the findings in a May 1, 2012 Psychiatric Evaluation Report (Exhibit 8F, TR. p. 285) prepared by Dr. Alberto Rodriguez-Robles on a consultative basis as evaluator and at the request of the Social Security Administration, 16 months after claimant became his

CIVIL 15-1004CCC                              5

patient.  This consultative psychiatric evaluation indicates that "the patient is undergoing treatment at our office" and includes the following findings: "As to **daily activities**," he reported "personal hygiene and getting dressed as the only daily activities" that she could perform; as to "**social functioning**," he observed that "the patient remains aloof, withdrawn, and does not like to spend time with people;" on "**work history**," the patient reported that she felt "restless, nervous, afraid, could not concentrate, became mad easily and forgot things frequently."  During the interview held in preparation of his May 1, 2012 Report, Dr. Rodriguez-Robles made the following observations: "she is apprehensive, depressed, has psychomotor retardation, her affect is restricted, mood depressed, her flow of thought is slow, logical, coherent and relevant and her thought content concerned self-deprecation ideas, helplessness, hopelessness and panic attacks."  Regarding "**concentration**," she was described as easily distracted and unable to follow the backward sequence of the months.  Her memory was described as adequate.  She was found to be oriented in the three spheres and her judgment was adequate.  The prognosis made was "poor."

      The record reflects that claimant received pharmacotherapy and psychotherapy throughout the 33 months of treatment with Dr. Rodriguez-Robles in addition to the medications prescribed at APS Clinics. The medical records pertaining to Dr. Rodriguez-Robles are much more extensive than what the ALJ discusses in her analysis.  The earliest psychiatric evaluation prepared by Dr. Rodriguez-Robles is dated August 12, 2011. See Exhibit 3F (TR. pp. 274-279).  The English translation for the date of this report, as well as for others, transposes the month for the day without taking into account that dates are written in Spanish in the following order:

CIVIL 15-1004CCC                    6

day/month/year. Therefore, the date of the psychiatric evaluation, at page 274 of Exhibit 3F, is incorrectly reported as December 8, 2011, instead of August 12, 2011. Dr. Rodriguez-Robles observed in this initial evaluation that claimant presented the following symptoms: "a depressive mood, poor concentration, crying, confusion, anxiety, forgets things, psychomotor retardation, does not want to get out of bed, lack of appetite, nightmares, poor attention and concentration, poor short and long term memory, restricted affect." TR., p. 274. He also observed that "she was not groomed, overweight, looked afraid and anguished", and that her attitude was "retracted, hostile, and she was angry and crying," her "posture was tense," "had psychomotor retardation," her "affect was depressed and irritable," her "thought process was coherent and relevant," she was oriented in the three spheres, her judgment was "regular" and her "immediate, recent and remote memories affected." TR. pp. 274-279. At the time, he prescribed three medications for her depressive condition.

The Mental Residual Functional Capacity Assessment prepared by Dr. Rodriguez-Robles (Exhibit 3F, TR. pp. 280-284) classifies claimant as "unable to meet competitive standards" for unskilled, semi-skilled and skilled work. He also found that claimant was unable to meet competitive standards in interacting with the general public, maintaining socially appropriate behavior, adhering to basic standards of cleanliness, and using public transportation. This residual functional capacity assessment defines "unable to meet competitive standards" as follows: "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." The explanation given for the work limitations reported were the following: "psychomotor retardation, depressive mood, affect

CIVIL 15-1004CCC                            7

restricted, irresponsibility, crying, poor attention and concentration, and poor memories." Exhibit 3F, TR. p. 281.  Upon answering the question on whether "the psychiatric condition exacerbates your patient's experience of pain or any other physical symptom?," Dr. Rodriguez-Robles replied: "the anxiety and depression do not allow her to manage stressful situations and aggravate the condition and frequency of the asthma."  He also reported that "claimant's impairments or treatments would cause her to be absent from work more than four days per month."  Exhibit 3F, TR. p. 283.

There are two other exhibits, Exhibits 13F and 23F, records prepared by Dr. Rodriguez-Robles during several months of psychotherapy and pharmacotherapy provided to claimant.  Exhibit 13F, dated October 25, 2012, lists the dates of claimant's visits to Dr. Rodriguez-Robles' office as January 25, February 23, March 23, April 20, May 25, June 29, July 20, August 17, September 14, October 13, November 8 and December 8, **2011**; January 19, February 16, March 12, May 9, June 4, August 2 and September 6, **2012**.  See TR., p. 320.  There are other visits for the year **2013** reported in Exhibit 23F, which consists of extensive clinical notes prepared by Dr. Rodriguez-Robles pertaining to claimant.

Exhibit 13F describes the following symptoms: "Patient presents anxiety, loss of memory, crying, insomnia, does not want to leave her bed, does not feel like doing anything, increased weight, gets anxious, insecure, and has conscience guilt.  Female patient with psychomotor retardation, poor attention and concentration, depressive mood, self-deprecating ideas, hopelessness, helplessness, and guilt." Id., TR. p. 320.  The prognosis reported was poor; the course of the illness was described as having started as a depressive mood in

CIVIL 15-1004CCC                          8

2010 and worsening and developing to a clinical profile of "Major Depression, severe and a GAF of 50." Id.

The Clinical Notes contained in Exhibit 23F (TR. pp. 415-426) for visits in 2012 and 2013 consistently reflect information regarding recurring panic attacks, generalized anxiety, major depressive disorder, cannot go out alone, forgetfulness, lack of concentration, nihilism and feelings of low self-esteem. The September 3, 2013 Note (TR. p. 415) states that claimant reported that she was at the Metropolitan Stabilizer Room in August 2013, referring to the Metropolitan Hospital at Cabo Rojo, Puerto Rico,[2] because she was very anxious, depressed, and having panic attacks. She stated that she suffered panic attacks all the time, had shortness of breath and would have to leave from places due to feelings of desperation. She also reported feeling insecure, incapable of relating with people and being with groups. A state of extreme anxiety, lack of concentration, forgetfulness, difficulty sleeping and panic attacks are persistent symptoms reported not only in the 2012-2013 Clinical Notes (Exhibit 23F) but also in the other reports issued by Dr. Rodriguez-Robles examined before. For example, in his initial Psychiatric Evaluation dated August 12, 2011 (Exhibit 3F) he narrates that claimant presented a depressive mood, poor concentration, confusion, anxiety, forgetfulness, psychomotor retardation, not wanting to get out of bed, poor short and long term memories, lack of appetite and restricted affect (TR., p. 274), self-deprecating ideas, "hopelessness state" (TR., p. 276) and he gave a diagnosis of severe major depression, referring to the applicable code 296.23 for Axis I (TR. p. 278). In his May 1, 2012 Psychiatric Evaluation

---

[2]TR., pp. 948-953. See hospital records of her admission through discharge dated August 15-16, 2013.

CIVIL 15-1004CCC                               9

Report (Exhibit 8F, TR. pp. 285-286), he refers to the limitations to her daily activities and social functioning. Her restricted affect, psychomotor retardation and sense of helplessness, together with her frequent panic attacks (3 to 4 weekly), turned her into a withdrawn person who stays at home and away from people. The evidence shows that this is a patient who, in addition to being treated at APS Clinics with pharmacotherapy, received both psychotherapy and pharmacotherapy during her treatment with Dr. Rodriguez-Robles. The record also reflects that she was treated by Dr. Rodriguez-Robles without interruption. Despite this, she continued manifesting the same symptoms of loss of memory, anxiety, insomnia, insecurity, psychomotor retardation, poor concentration, self-deprecation, panic attacks and major depression. See Exhibits 3F, 8F, 13F and 23F. She took a total of six medications to manage the symptoms of her major depression throughout her psychiatric treatment at APS Clinics and at Dr. Rodriguez-Robles' office. This resulted in claimant being heavily sedated, as evidenced by medical records which contain notations that her sleep pattern was altered because of the heavy sedation. Heavy sedation as a side effect of medications is a fact largely ignored by the ALJ, despite repeated references in Dr. Rodriguez-Robles's reports that her daily activities and social functioning were limited, her concentration and memory poor, her affect restricted and that she manifested confusion and psychomotor retardation.

Finally, during the administrative hearing the ALJ probed as to claimant's ability to perform her previous jobs of "supervisor, order taker" and "sales representative, food products, ... both classified as **skilled** jobs with an Specific Vocational Preparation (SVP) of 5," (TR. pp. 35-36; emphasis ours). The ALJ submitted vocational factors to the vocational expert's consideration that were

CIVIL 15-1004CCC                    10

limited to claimant's academic preparation, age, previous work, ability to lift ten to twenty pounds, and other physical activities such as climbing stairs, walking, leaning, number of hours she could sit or stand during an eight-hour workday, exposure to fumes, odors and poor ventilation, and the ability to do unskilled work of a simple, routine and repetitive nature.  TR., pp. 34-36.  No mention was made to the expert of claimant's mental disorder.  When the vocational expert was asked if claimant "could do any of the jobs ... indicated previously," his answer was: "No, due to the fact that she is limited to **unskilled** work." (Emphasis ours.)  TR., p. 36.

>    The ALJ then turned to the question "would there be any other job in the national economy that this person could do?" (TR. p. 36).  He used the same hypothesis outlined above, that is, vocational factors and functional activity relevant to claimant without any mention to the vocational expert of her mental disorder.  This was done despite the extensive medical evidence on record documenting claimant's mental impairments and her Mental Residual Functional Capacity Assessment dated August 12, 2011 prepared by Dr. Rodriguez-Robles (Exhibit 3F; TR. pp. 280-284).  The Mental Residual Functional Capacity Assessment included findings that linked claimant's "psychomotor retardation, depressive mood, restricted affect, irresponsibility, crying, poor attention and concentration and poor memories" to being "unable to meet competitive standards to do unskilled, semi-skilled and skilled work." This residual functional report also indicated that the anxiety and depression did not allow her to manage stressful situations and aggravated her asthma condition.  Her social functioning and daily activities as well as concentration and persistence were reported as markedly restricted.  This functional assessment report is part of a more inclusive initial psychiatric evaluation

CIVIL 15-1004CCC                              11

prepared by Dr. Rodriguez-Robles as early as August 12, 2011 (Exhibit 3F; TR. pp. 274-279) which is compatible with the medical evidence corresponding to the years 2012 and 2013.

The vocational expert's response, based on that incomplete setting, was that three jobs were available in the national economy that could be performed by claimant: "cashier II," "finisher," "mail clerk." TR. pp. 36-37.

Immediately after this response, the following exchange took place between claimant's attorney and the vocational expert:

> –: If we take a person like the one described in the records, who has emotional limitations according to those described by Dr. Rodriguez Robles, psychiatrist and social security evaluator. He indicates that she "is unable to meet competitive standards," with regard to her ability – and I'll read it in English, just as the document is written: "perform at a consistent pace without an unreasonable number and length of rest periods, work in coordination with or in proximity to others without being unduly distracted, sustain an ordinary routine without special supervision, maintain attention for two hour segments, respond appropriately to changes in a routine work setting, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes." Considering just one of these, would the person be able to do the jobs that you mentioned previously, or any other job that exists in the national economy?
>
> --: How is she classified? In what way?
>
> --: She is unable to meet competitive standards –
>
> –: At all?
>
> –: At all.
>
> –: **The answer is, she wouldn't be able to do any of the jobs mentioned previously**.

TR., pp. 37-38 (Emphasis ours.)

There is a medically documented history of a major, severe depression for a period of more than two years during which she has required continuous psychiatric treatment and during which she has manifested constant symptoms of sleep disturbance, psychomotor retardation, difficulty concentrating,

CIVIL 15-1004CCC 12

isolation, low self-esteem, marked restriction of activities of daily living and social functioning, poor memories. These symptoms have persisted uninterruptedly despite constant medication during the entire period of treatment which resulted in functional limitations due to the effects of heavy sedation. The vocational expert unequivocally concluded that based on the applicable guidelines, she is unable to perform her past work or any less-demanding, unskilled work of the type identified by him which is available in the national economy.

Regarding the date of onset of the disability, the Court finds that the applicable date is August 12, 2011 as supported by the medical evidence on record.

For the reasons stated, the Court concluded in its Judgment issued on September 30, 2016 (d.e. 20) that the Secretary's determination was not supported by substantial evidence in the record.

SO ORDERED.

At San Juan, Puerto Rico, on October 14, 2016.

S/CARMEN CONSUELO CEREZO
United States District Judge